UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cr-143-CEA-SKL |
| ) | |
| SYLVESTER PRYOR, ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant Sylvester Pryor ("Defendant") [Doc. 27]. Defendant's motion seeks to suppress all evidence found in an allegedly illegal traffic stop. Plaintiff United States of America ("Government") filed a response in opposition to the motion [Doc. 32]. The motion to suppress was referred for a report and recommendation by standing order pursuant to 28 U.S.C. § 636(b). An evidentiary hearing on the motion was held on February 27, 2023, and this matter is now ripe. For the reasons stated below, I find the stop did not violate the Fourth Amendment and I recommend that Defendant's motion to suppress be denied.

### I. FACTUAL BACKGROUND

The Government called Chattanooga Police Department ("CPD") patrol officer Kelly Cronon ("Cronon") as its sole witness. Defendant called no witnesses. Cronon has been a patrol officer with the CPD for five years and her experience as a patrol officer was not challenged. The collective evidence credibly establishes the following.

Between midnight and two a.m. on March 28, 2021, Cronon and fellow CPD officer Sean

Martin[1] were at a gas station located on Amnicola Highway in their separate patrol cars. Cronon observed a green Yukon exit the parking lot and travel southbound on Amnicola Highway without its headlights on. Defendant was later determined to be the driver and sole occupant of the Yukon. The officers exited the parking lot in their separate patrol cars to catch up to the Yukon, because Defendant did not illuminate his headlights as he drove away from the gas station. Martin was in the lead and Cronon followed a short distance behind Martin.

Martin was equipped with a body-worn camera. While Martin's patrol car had a dash camera, it did not record events that night. Cronon had a body camera and her patrol car had a functioning dash camera. All three functioning cameras recorded footage of the minutes leading up to the stop, the stop itself, and their interactions with Defendant following the stop. Officer Dagostino ("Dagostino"), a later-arriving assisting CPD officer, had a functioning body camera that also recorded certain events after the stop. The available footage was entered as Government's Exhibits 1-4, and Defendant's Exhibit 1.

The footage of the stop was reviewed with Cronon during the hearing. As relevant, she testified her dash camera captured the Yukon traveling southbound on Amnicola Highway without its headlights or taillights illuminated. Then, as the Yukon approached a stoplight, either the Yukon's taillights or brake lights illuminated. Defendant entered the turn lane, to make a left turn onto Wilcox Boulevard from Amnicola Highway, and stopped at the red light. Martin was directly behind the Yukon. Cronon was in the turn lane to the right of the Yukon, approximately one car length behind it. The back of the vehicle in front of Defendant's vehicle appears to be illuminated, but Cronon was not certain that the illumination came from Defendant's headlights.

---

[1] Martin has been terminated from the CPD for unrelated conduct as set forth in a joint stipulation of the parties. Defendant's Exhibit 2 is the April 1, 2022 Notice of Termination letter from CPD to Martin.

As the light turned green and Defendant began to travel through the intersection, Cronon observed that neither the Yukon's taillights nor brake lights were illuminated for a few seconds as Defendant turned left onto Wilcox Boulevard.

As Defendant's Yukon made the left onto Wilcox Boulevard, Martin turned on his patrol car's blue lights, and the officers initiated a traffic stop. Cronon approached the passenger's side of the stopped vehicle. Martin approached the driver's side of the Yukon and spoke with Defendant through the open window. Because the passenger window was closed, Cronon could not hear what was said, but the conversation is recorded. On the recording, Martin says to Defendant, "You know you're driving with no lights on?" Defendant responded to the effect that his headlights worked but they also malfunctioned when the emergency brake was on. He also said, "Sometimes I forget to turn them back on." Martin asked Defendant to exit the Yukon and Martin and Defendant then walked back to the front of Martin's patrol vehicle. While there, Defendant is recorded telling Cronon, "I explained to you why my lights was off."

I **FIND** that, at times in the recorded footage, Defendant's lights appear to be off while he is driving. At other times in the footage, Defendant's lights appear to be illuminated. For instance, after the car was stopped, Defendant demonstrated that his headlights worked. Also, footage after the stop from Dagostino's body camera shows Defendant's Yukon with illuminated headlights.

During the search of the Yukon, officers allegedly located a stolen gun and a bag of marijuana.

II. **STANDARDS**

A. **Fourth Amendment**

All seizures—including brief investigatory traffic stops—receive Fourth Amendment

3

protection. *See United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011) (citing *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010)). The Fourth Amendment guards against unreasonable searches and seizures.[2] U.S. Const. amend. IV; *Elkins v. United States*, 364 U.S. 206, 222 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.").

The United States Court of Appeals for the Sixth Circuit "has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008); *see also Whren v. United States*, 517 U.S. 806, 810 (1996) (holding that stopping an automobile is reasonable where there is probable cause to believe a traffic violation has occurred); *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (holding that reasonable suspicion standard is sufficient for ongoing traffic violation but not a completed misdemeanor). "So long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Lott*, 954 F.3d 919, 922 (6th Cir. 2020) (quoting *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005)).

Generally, if a seizure is not conducted in compliance with the Fourth Amendment, all evidence obtained as a result of the seizure must be suppressed. *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("[E]vidence and statements obtained from [an] illegality must be excluded as 'fruit of the poisonous tree.'" (quoting *Wong Sun v. United States*, 371 U.S. 471, 488

---

[2] A defendant has the burden of establishing a legitimate expectation of privacy to assert a Fourth Amendment right. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). As a preliminary matter, the Government does not contest that Defendant had a legitimate expectation of privacy with respect to the constitutional issue raised in his motion.

4

(1963))). This remedy of evidence exclusion is a "judicial innovation," *United States v. Clariot*, 655 F.3d 550, 553 (6th Cir. 2011), to be used as a "last resort, not [a] first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Defendant, as the proponent of the motion to suppress, generally bears the burden of establishing his Fourth Amendment rights were violated by a challenged search or seizure. *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). It is the Government's burden, however, to demonstrate by a preponderance of the evidence that a particular search or seizure is constitutional. *See United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004) (citing *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990)).

**III. ANALYSIS**

The Government argues the officers had probable cause to believe that a traffic violation was occurring because Defendant drove his vehicle after midnight without his headlights illuminated.[3] Defendant acknowledges that *if* the officers had probable cause to believe he was operating his vehicle after dark without his headlights illuminated, then the stop would not violate the Fourth Amendment, but he argues his headlights were illuminated, so the stop violated the Fourth Amendment.

Tennessee law provides that "the headlights of every motor vehicle . . . shall be displayed during the period from one half (1/2) hour after sunset to one half (1/2) hour before sunrise." Tenn. Code Ann. § 55-9-406(a). The sole issue presented is whether the Government met its burden to prove by a preponderance of the evidence that the officers had probable cause to stop Defendant for driving without his headlights on. I find the Government has met its burden.

---

[3] While Defendant's motion sometimes mentions the less strenuous standard of reasonable suspicion, the Government addresses probable cause. As the higher standard of probable cause is met in this case, the Court need not address reasonable suspicion.

Defendant challenges only the constitutionality of the initial traffic stop, mainly arguing that the recorded footage of the stop shows Defendant's headlights were on at *all* pertinent times. He argues the footage shows that, as the officers are located behind Defendant's stopped car at the traffic light, Defendant's illuminated headlights are seen being reflected back off the vehicle in front of him. He also argues the footage after the stop from Dagostino's body camera clearly shows Defendant's Yukon with operating and illuminated headlights. I agree that there are times in the footage that clearly show Defendant's headlights were operational and turned on. Contrary to Defendant's argument, however, the footage does not demonstrate his headlights were illuminated at all required times. Indeed, there are times where it appears from the footage that Defendant is operating his vehicle without his headlights or taillights on, and a short time as he first began to drive down the road where the recordings do not show Defendant's vehicle at all. The video is simply not clear enough to contradict the testimony that Defendant drove without his lights on, unlike the nonbinding case cited by Defendant [Doc. 27 at Page ID # 47-48 (citing *United States, v. Rodriguez*, 737 F. Supp 85, (M.D. Ga 1990)]. If facts shown on video recordings can be interpreted in multiple ways, or if they do not show all relevant facts, the Court is not required to credit the video over the testimony. *See United States v. Hughes*, 606 F.3d 311, 318-20 (6th Cir. 2010) (reversing grant of motion to suppress, noting that photographs which "do not reveal the actual width of the road and do not indicate where on the road [the defendant] was parked" do not "utterly discredit[]" officer's testimony that the defendant's vehicle "had left less than twelve feet of space free on the road").

Cronon unequivocally testified that she (and Martin) observed Defendant driving in the dark without his headlights on. In addition to unsuccessfully challenging this testimony with footage of the stop, Defendant argues Cronon's testimony should be discounted because she was,

6

at times, too far behind Defendant's vehicle to clearly see if his headlights were on. While that may be true, there were also times when Cronon was close enough to the Yukon to see if its headlights were on. Moreover, the footage supports her testimony as it appears, at least to me, that the Yukon does not have its lights on for part of the short drive.

Finally, Defendant's own statements support that his headlights, while operational, were off for some period of time as he drove down the street. Defendant's argument that, because of the circumstances of Martin's termination, Defendant's own statements should be discounted in light of Martin's suggestion to him that his lights were off, is not persuasive. Nothing about Martin's recorded comment to Defendant about his reason for the stop was in any way coercive, and Defendant immediately explained why his headlights were off. When Defendant was told why he was stopped, Defendant did not deny that he had driven without his headlights; instead, he tried to explain why he had done so—not once, but twice.

Having carefully considered the evidence and testimony presented at the evidentiary hearing, I **FIND** Cronon's testimony, including that she observed the vehicle traveling without headlights illuminated is fully credible and supports the stop. *See e.g., Lott*, 954 F.3d at 922 ("So long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment."); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc) (same). Even after repeated and vigorous cross-examination, Cronon's testimony remained plausible and internally consistent, and it is not contradicted by extrinsic evidence such as the recorded footage of the stop. As noted above, there was absolutely no evidence that Defendant's lights were actually on the entire drive.

In this case, where there is no contrary testimony at all—just the footage—the testimony prevails. And, while reasonable minds can differ regarding portions of the footage of

illumination, in my view the video supports that the Yukon's lights were not on for the entire drive as admitted by Defendant in the footage. Consequently, I **FIND** the Government has met its burden to establish the officers had probable cause to initiate a traffic stop for a violation of Tennessee Code Annotated § 55-9-406(a). As the officers did not commit a violation of Defendant's Fourth Amendment rights by initiating the traffic stop, Defendant's motion to suppress should be denied.

IV.     **CONCLUSION**

For the reasons stated above, I **RECOMMEND**[4] that Defendant's motion to suppress [Doc. 27] be **DENIED** in its entirety.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).